UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: WEEKS MARINE, INC., as owner and operator of the BT 229 for Exoneration From or Limitation of Liability | CIVIL ACTION<br><br>NO. 13-CV-831-JWD-SCR |

**ORDER AND REASONS**

This matter comes before the Court on the Motion for Summary Judgment on Borrowed Servant Status filed by Claimant-in-Limitation/defendant Aerotek, Inc. (Doc. 8). The Motion is opposed by Petitioner-in-Limitation Weeks Marine, Inc. (Doc. 11). Oral argument is not necessary.

Having carefully considered the law and facts in the record, the Court grants the motion in part and holds that, as a matter of law, Claimant Randall Harrold is the borrowed servant of Petitioner in Limitation Weeks Marine, Inc., and that, consequently, Aerotek, Inc.'s maintenance and cure obligation is terminated. In all other respects, Aerotek, Inc.'s motion is denied.

*I. Background and Contentions of the Parties*

This is a limitation of liability proceeding brought by Weeks Marine, Inc. ("Weeks") as the owner of the barge BT 229. In its complaint (Doc. 1 in No. 3:13-cv-00831), Weeks claims that it is entitled to exoneration from or alternatively, limitation of liability, for personal injury damages alleged to have been suffered by Randall Harold ("Harrold") on October 26, 2012 as he was working aboard barge BT 229.

In addition to filing an answer and claim in the limitation action, Harrold filed a separate suit in the Louisiana 19th Judicial District Court for personal injuries under the Jones Act, 46

U.S.C. § 30104 (formerly 46 U.S.C. § 688), and for unseaworthiness. (Doc 8-2). Harrold also claimed entitlement to maintenance and cure. (Id.). Harrold's suit was removed to the Middle District of Louisiana (Doc. 1 in No. 3:13-cv-762) and consolidated with the limitation action. (Doc. 7 in No. 3:13-cv-762). Ultimately, Harrold's suit was deconsolidated from the limitation action and remanded to state court. (Order, Doc. 63 in No. 3:13-cv-762).

On December 7, 2011, Weeks entered into a contract ("Service Contract") with Aerotek, Inc. ("Aerotek"), a staffing service agency. In that contract, Aerotek agreed to provide supplemental staffing of workers for Weeks. (Docs. 8-4 and 11-1). On September 22, 2012, Harrold signed an Employment Agreement with Aerotek in which he agreed to be assigned to work as a crane operator for Weeks beginning on that date. (Docs. 8-7 and 11-2). Harrold worked for Weeks as a crane operator for 17 days between his start date of September 22, 2012, and the time of his accident on October 26, 2012. (Doc. 11-4). Harrold was injured as he was assisting another worker repair the crane on the BT 229.

Aerotek asserted a claim in the limitation action seeking reimbursement of worker's compensation and maintenance and cure benefits paid to Harrold,[1] alleging that Weeks was Harrold's borrowing employer. (Doc. 3 in 3:13-cv-00831). In this Motion for Summary Judgment, Aerotek seeks a judicial determination that, at the time of the accident, Harrold was a borrowed servant of Weeks and therefore is entitled to terminate maintenance and cure benefits to Harrold and, in addition, is entitled to recover from Weeks reimbursement of the sums it paid to Harrold as a result of his October 26, 2012 accident. (Doc. 8).

---

[1] Aerotek contends that these benefits were paid "under both the LHWCA and Jones Act." (Doc. 8-8, p.3)

Weeks counters that there are questions of fact regarding both Harrold's status as a borrowed employee as well as the correctness of amounts paid by Aerotek to Harrold for maintenance and cure and/or benefits under the Longshore and Harborworkers Compensation Act., 33 U.S.C. § 901 *et seq.* ("LHWCA"). Thus, Weeks contends that Aerotek's Motion for Summary Judgment should be denied.

## II. Discussion

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc*., 939 F.2d 1257, 1263 (5th Cir.1991).

### B. Analysis - Borrowed Servant

If Mr. Harrold is the borrowed servant of Weeks, then Weeks will be responsible for paying, depending on Harold's status, LHWCA benefits or maintenance and cure. *Hall v. Diamond M. Co.*, 732 F.2d 1246, 1249 (5th Cir. 1984); *Baker v. Raymond International*, 656 F.2d 173, 178 (5th Cir. 1981).[2] The question of whether a worker has become a borrowed servant is a question of law for the district court to determine. *Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1244 (5th Cir. 1988) (quoting *Gaudet v. Exxon*, 562 F.2d 351, 367 (5th Cir. 1977), *cert. denied* 436 U.S. 913 (1978)). However, the "analysis used to determine that question is fact driven." *Fairley v. Murphy Exploration & Production Co.*, No. 13-6495, 2014 WL 5780579, at *4 (E.D. La. 2014).

The borrowed servant doctrine was originally recognized by the Supreme Court as a way of holding the borrowing employer liable under *respondeat superior* for the negligence of any employee he had borrowed. *Standard Oil v. Anderson*, 212 U.S. 215, 29 S.Ct. 252 (1909). In *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969), the Fifth Circuit used the doctrine to give the borrowing employer a shield from tort liability from its borrowed employee under the LHWCA. See also, *Melancon v. Amoco Production Co*, 834 F.2d at 1244, note 10.

While there is "no fixed test" to determine Harrold's status as a borrowed servant, *Ruiz v. Shell Oil Co.*, *supra*, sets out nine factors that this Court must consider: 1) Who had control over

---

[2] It is possible under the Jones Act for a seaman to have dual employers. *Guidry v. South Louisiana Contractors,* 614 F.2d 447, 452 (5th Cir. 1980); *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 225-226 (5th Cir 1975); *Dennis v. Calm C's, Inc.*, No. 10-0876, 2011 WL 3898045 at * 2 (E.D. La. 2011) ("[S]eamen can have more than one employer for purposes of the Jones Act."). However, the circumstances necessary for this to occur are not present in this case.

Harrold and the work he was performing? 2) Whose work was being performed? 3) Was there an agreement, understanding or meeting of the minds as between the original and putative employer? 4) Did the employee agree or acquiesce to be employed by the putative employee? 5) Who furnished the tools and place of employment? 6) Did the original employer terminate his relationship with the employee? 7) Was the new employment over a considerable length of time? 8) Who had the right to discharge the employee? 9) Who had the obligation to pay the employee?

Both parties contend that the *Ruiz* factors favor their position in this motion. The Court will consider each factor separately.

*(1) Who had control over Harrold's work?*

Both parties concede that Harrold's work as a crane operator was under the supervision and control of Weeks although Weeks contends that the work being done by Harrold *at the time of the accident* (assisting in the repair of the crane) was not. (Doc. 11, pp. 7-8).

Aerotek's contentions on this point are set out in Doc. 8-1, pp. 5-6. It points to § 2.1 of the Service Agreement which provides that contract employees, like Harrold, "shall provide services under Client's [Weeks'] management and supervision at a facility or in an environment controlled by Client." (Doc. 8-4, p.1). Aerotek points to Harrold's deposition where he testified that he received his daily orders from a Weeks' employee who supervised his daily crane operations. (Doc. 8-5, p12). Harrold stated in his deposition "Aerotek don't do no work. I don't work for Aerotek. I work for Weeks Marine." (Doc. 8-5, p. 3)

Weeks' concedes that "Weeks exercised control over Mr. Harrold with regard to his work as a Crane operator" but contends that because Harrold was assisting the employee of a

subcontractor who, at the time of the accident, was repairing the crane, Weeks was not controlling his work at that time. (Doc.11, pp. 7-8). Furthermore, Weeks contends that assisting in the repair of the crane was not part of Harrold's duties and that he was doing this voluntarily without instructions to do so from his employer. (Id.)[3]

However, it is clear that Aerotek played no role in supervising Harrold either while he worked for Weeks as a crane operator or in the specific work which was being done at the time of the accident. Furthermore, "[t]he central question in borrowed servant cases is whether someone has the *power to control* and direct another person in the performance of his work." *Hebron v. Union Oil Co. of California*, 634 F.2d 245, 247 (5th Cir. 1981) (italics added). It is clear that even if the crane repair was not being supervised by Weeks, all of Harrold's work on barge BT 229 was subject to Weeks' *right of control and supervision*. The Court finds that the factor of control weighs in favor of movant Aerotek.

*(2) Whose Work Was Being Performed?*

Aerotek contends that Weeks' work was being performed at the time of the accident. (Doc. 8-1, pp. 6-7). It contends, and this is not disputed, that Aerotek is an employment staffing service which does not own or operate barges, cranes, or perform dredging operations on the Mississippi. During the time between signing the agreement and his accident, Harrold worked exclusively for Weeks.

Weeks counters that, again, the specific work being done by Harrold at the time of the accident was not that of Weeks but, rather, was that of a contractor who was hired by Weeks to

---

[3] Actually, Harrold testified that he assisted the welder in the crane repair because "we were shorthanded. The other three left to go load groceries. Somebody had to help the welder." (Doc. 11-6, p. 8).

repair the Crane. (Doc. 11, p. 11). It is clear to the Court that the repair of the Crane was necessary for the operation of dredge barge BT 229 and, therefore, Harrold's work generally, as well as the work being performed at the time of the accident, was for Weeks. This is supported by Harrold's testimony in Doc. 11-6, p. 8, quoted in footnote 3.

In *Melancon v. Amoco Production Co.*, *supra*, the plaintiff, a welder, was injured while carrying a heavy valve. 834 F.3d at 1241. In deciding whose work was being performed, the Court looked not to the specific task he was doing at the time of the accident but the role he played generally in carrying out his duties and its furtherance of the Amoco's business on the platform. "It is irrelevant that Melancon's primary job was welding, which was an essential, although only incidental aspect of Amoco's business." 834 F.2d at 1245. Here, Harrold's overall job as well as the specific task being performed at the time of the accident was essential to the business of the barge. This factor weighs in favor of the summary judgment.

> *(3) Was there an agreement, understanding or meeting of the minds as between the original and putative employer?*

Aerotek contends that the service agreement, as actually implemented, favors its position. (Doc. 8-1, pp. 7-8). It concedes that the agreement declares Aerotek to be independent contractor responsible for the payroll of Harrold and similarly situated contracted employees. (Id., p.7; Doc. 8-4, §3, p. 1). But it argues that the "realities of the workplace" can modify, alter or waive contract provisions (see *Melancon v. Amoco Production Co.*, 834 F.2d 1238 (5th Cir. 1988)) but, in any event, the terms of the contract between a borrowing employer and a payroll employer do not ordinarily provide sufficient basis to deny summary judgment when the remaining *Ruiz* factors establish borrowed servant status. *Alexander v. Chevron U.S.A.*, 806 F.2d 526 (5th Cir. 1986).

Weeks points the Court to the same provision in the Service Agreement (Doc. 11, p. 8; Doc. 8-4, §3, p. 1) and, further, points to §10.1 of that agreement where it states "Aerotek is not an employment agency" and that the contracted employee could not be hired by Weeks for a period of one year or suffer liquidated damages. (Id.).

This factor presents a closer question. However, when the Court considers the "reality of the workplace," the Court finds that this factor tips in favor of Aerotek. Despite the contractual language, the evidence presented shows that Harrold believed himself to be working only for Weeks and his belief is borne out by the other evidence of his work on the barge. *Fairley v. Murphy Exploration & Production Co.*, 2014 WL 5780579 at * 4.

Furthermore, the cases which have denied summary judgment based on contract language have relied on language in the contract specifically prohibiting the putative employer from becoming the borrowed employer. See *Alexander v. Chevron U.S.A.*, 806 F.2d at 528, distinguishing *West v. Kerr-McGee Corp.*, 765 F.2d 526 (5th Cir. 1985) and *Adlay v. Patterson Truck Lines, Inc.*, 750 F.2d 375 (5th Cir. 1985). No such language exists in this contract.

> *(4) Did the employee agree or acquiesce to be employed by the putative employee?*

Aerotek points to the testimony of the plaintiff in which he flatly concedes that he agreed and consented to work for Weeks (Doc 1, p. 8; Doc 8-5, p. 7; see also Doc. 8-5, p. 3 where the plaintiff stated "I work for Weeks."). Although Weeks concedes that plaintiff "ha[d] no knowledge of the terms or conditions of the Aerotek Services Agreement between Aerotek and Weeks," (Doc. 11, p. 9), it nonetheless argues that the contract's provision that plaintiff would remain an employee of Aerotek who would pay the plaintiff, weighs against the application of the borrowed servant doctrine. (Id.)

"The focus of this factor is whether the employee was aware of his work conditions and chose to continue working in them." *Brown v. Union Oil of California*, 984 F.2d at 678 (citing *Melancon v. Amoco Production Co.*, 834 F.2d at 1246). See also *Fairley v. Murphy Exploration & Production Co.*, 2014 WL 5780579 at *4. In light of the clear and unequivocal testimony of the plaintiff and the other evidence on this point, the Court finds that this factor weighs in favor of Aerotek's motion.

*(5) Who furnished the tools and place of employment?*

Both Aerotek (Doc. 8-1, p. 9) and Weeks (Doc. 11, p. 10) agree that Weeks provided the tools and place of employment for plaintiff's work as a crane operator. Without citation to any evidence, Weeks argues that Harrold's assisting a contract employee in the repair of the crane somehow changes these facts. (Doc. 11, p. 10). It is clear that the place of employment at the moment of the accident was the Weeks' barge and the Court has been directed to no evidence suggesting that any tools he used at any time belonged to anyone other than Weeks. This factor favors Aerotek.

*(6) Did the original employer terminate his relationship with the employee?*

Although the plaintiff clearly remained the payroll employee of Aerotek, Aerotek argues that this *Ruiz* factor does not require a lending employer to completely sever his relationship with the worker. *Capps v. N.L. Baroid-NL Industries, Inc*. 784 F.2d 615, 617 (5th Cir.), *cert. denied*, 479 U.S. 838 (1986), ("Such a requirement would effectively eliminate the borrowed employee doctrine as there could never be two employers.") (Doc. 8-1, pp. 8) Aerotek points to plaintiff's exclusive work for Weeks, his supervision by Weeks and his understanding that he worked for Weeks and not Aerotek. (Id.)

Weeks points the court to Aerotek's failure to produce any separation or termination notice with Aerotek and argues that the provisions of the contract demonstrate the continuing relationship with plaintiff. (Doc. 11, pp. 9-10)

The Court finds that this factor favors borrowed servant status. "The Fifth Circuit has held that the fact that a plaintiff had no contact with his lending employer and was supervised totally by the borrowing employer's personnel while on the job is sufficient to meet this *Ruiz* factor." *Tajonera v. Black Elk Energy Offshore Operations, LLC*, 2014 WL 5113322 (E.D. La. 2014), at *16 (citing *Hotard v. Devon Energy Production Co., LP*, 308 Fed. Appx. 739, 742 (5th Cir. 2009)). This is precisely the case here.

*(7) Was the new employment over a considerable length of time?*

Aerotek argues that plaintiff's employment was "not limited in duration" and that he worked 21 days on and 7 days off from September 22, 2012 until October 26, 2012, the day he was injured. (Doc. 8-1, pp. 9-10). However, Weeks attaches plaintiff's payroll records which show that plaintiff worked for 17 days during this period. (Doc. 11, pp. 10-11; Doc. 11-4). Weeks directs the Court's attention to *Robertson v. W&T Offshore, Inc.*, 712 F.Supp.2d 515, 533 (W.D. La. 2010), citing *Brown v. Union Oil of California,* 984 F.2d 674, 679 (5th Cir. 1993) for the proposition that a one month period of employment is "neutral" in the *Ruiz* evaluation.

The Court agrees with Weeks that this factor is "neutral".

*(8) Who had the right to discharge the employee?*

Aerotek argues that the focus of this factor should not be whether the borrowing employer has the right to discharge the employee, but rather, whether the borrowing employer has the right to terminate the employee's services. (Doc. 8-1, p. 10). According to the Service

Contract, Weeks reserved the right to terminate plaintiff's services at the onset of his placement or at any time throughout the engagement. (Doc. 8-4, § 11, p. 2).

Weeks argues that both Weeks and Aerotek had the right to discharge the plaintiff and points to the Service Contract, Doc 8-4, § 1, p. 1 (either party may terminate the contract on 30 days written notice). (Doc. 11, p. 11). Thus, Weeks argues that this factor is neutral. (Id.)

The Court agrees with Aerotek: this factor is met because Weeks could terminate Harrold's services at any time. *Capps*, 784 F.2d 717-618; *Hebron v. Union Oil Co. of California*, 634 F.2d 245 (5th Cir. 1981); *Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1246 (5th Cir. 1988); *Brown v. Union Oil Co. of California*, 984 F.2d at 679 (5th Cir. 1993); *Fairley v. Murphy Exploration & Production Co.*, 2014 WL 5780579 at *5.

*(9) Who had the obligation to pay the employee?*

Aerotek admits that it issued plaintiff's paycheck but argues that the proper test for this factor is who furnished the funds to pay the employee. (Doc. 8-1, pp. 10). Under the Service Contract, Weeks was obligated to reimburse Aerotek for the services rendered by plaintiff and therefore, argues Aerotek, Weeks was responsible to "furnish the funds to pay the employee".

Weeks argues simply that because Aerotek paid plaintiff's salary, this factor weighs in its favor. (Doc. 11, p. 11)

Aerotek's position is the correct one. *Capps*, 784 F.2d 717 at 618; *Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1246 (5th Cir. 1988); *Fairley v. Murphy Exploration & Production Co.*, 2014 WL 5780579 at *5. This final factor weighs in favor of borrowed servant status.

Aeroteck claims that its payments to Harrold were made under both the LHWCA and

Jones Act. (Doc. 8-8, p. 3). Weeks disputes this. (Doc. 11-9, p. 3). However, for purposes of the *Ruiz* analysis, this issue is irrelevant since the *Ruiz* factors apply to the borrowed servant issue in a Jones Act as well as LHWCA case. See, e.g. *Hall v. Diamond M. Co,,* 635 F.Supp. 362 (E.D. La. 1986), on remand from 732 F.2d 1246 (5th Cir. 1984); *Dennis v. CALM C's Inc.*, 2011 WL 3898045 (E.D. La. 2011) (both applying the *Ruiz* factors in a seaman's personal injury case).

If some of the *Ruiz* factors involve fact questions, those questions must be submitted to the fact finder "unless a sufficient number of other factors clearly favor summary judgment." *Barrios v. Freeport-McMoran Resource Partners*, 1994 WL 90456 (E.D. La. 1994). Here, all factors favor the borrowed servant status of Harrold save one, and that one is neutral. Summary judgment on Harrold's status as a borrowed servant of Weeks is granted.

**C. Analysis - Reimbursement of Benefits Paid By Aerotek**

Aerotek argues that because Weeks is the borrowing employer, Weeks is obligated to reimburse it for the benefits paid to Harrold as a result of his on the job injury. In its Statement of Uncontested Facts (Doc. 8-8, p. 3), Aerotek states that "[f]ollowing Harold's accident of October 26, 2012, worker's compensation benefits were initiated under both the LHWCA and Jones Act to Randall Harold" and that Aerotek has paid Harrold $116,615.84 in indemnity benefits and $31,391.51 in medical benefits. Furthermore, Aerotek states that it is continuing "to pay benefits to Harrold under its maintenance and cure obligation." (Id.).

In its Reply to Aerotek's Statement of Uncontested Facts (Doc. 11-9), it disputes Aerotek's allegations. Weeks correctly points out that Aerotek attached no documentation to its motion that it has paid any benefits to Mr. Harrold and, if paid, whether they were paid under LHWCA or the Jones Act. Furthermore, Weeks correctly states that there is no documentation of

Harrold's injuries and, under the applicable law (whether that is LHWCA or Jones Act) no documentation that Harrold was owed any of the benefits he paid. Weeks argues that indemnity benefits under the two schemes are calculated differently and that "Weeks cannot be held liable for Aerotek's worker's compensation benefits by simply calling them maintenance and cure benefits, without determining whether Mr. Harrold is entitled to maintenance and cure payments, and then performing the necessary computation to determine the appropriate amount of maintenance and cure due, and comparing it to what Aerotek has paid."

As to this part of Aerotek's motion, the Court finds that Aerotek has failed to properly support its motion. Further, the Court finds that there are material issues of fact and law that preclude the granting of a summary judgment at this time. Accordingly, this part of Aerotek's motion is denied.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that Aerotek, Inc.'s Motion for Summary Judgment on Borrowed Servant Status (Doc. 8) is **GRANTED IN PART**, and that, as a matter of law, Claimant, Randall Harrold, is the borrowed servant of Petitioner in Limitation, Weeks Marine, Inc.;

**IT IS FURTHER ORDERED** that Aerotek's maintenance and cure obligation is terminated; and

**IT IS FURTHER ORDERED** that, in all other respects, Aerotek's motion is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>January 26, 2015</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**